IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Keith Bradley Graham, #296078,)      C. A. No. 2:08-3603-HFF-RSC
                        )
        Petitioner,    )
                        )
      -versus-    )    **REPORT AND RECOMMENDATION**
                        )
Henry Dargan McMaster, the  )
Attorney General of the State )
of South Carolina; Warden,   )
Lee Correctional Institution, )
                        )
      Respondents.  )

    This habeas corpus petition under 28 U.S.C. § 2254 brought
by a state prisoner proceeding with counsel, *William I. Diggs*, *is*
before the undersigned United States Magistrate Judge for a
report and recommendation on the respondents' motion for summary
judgment filed on February 19, 2009.  28 U.S.C. § 636(b).

### PROCEDURAL HISTORY

    The petitioner, Keith Bradley Graham, is currently
incarcerated in Lee Correctional Institution of the South
Carolina Department of Corrections pursuant to an order of
*commitment from the Clerk of Court of Fairfield County.*  A
Fairfield County Grand Jury indicted Petitioner in April 2003 for
murder. (PCR App. pp. 377-378).  Robert C. Fitzsimmons, Esquire,
represented Petitioner on the charge.  A jury trial was held
September 2-4, 2003, before the Honorable Kenneth G. Goode.  The
jury convicted Petitioner as charged. (PCR App. pp. 367).  The

1

petitioner was sentenced to thirty (30) years imprisonment. (PCR App. p. 375).

Petitioner appealed his conviction and was represented by Tara D. Shurling, Esquire. Appellate counsel filed a Final Brief of Appellant in the South Carolina Court of Appeals on October 11, 2004, and raised the following issue:

> Was the Appellant entitled to a directed verdict of acquittal where the State failed to prove that Appellant was guilty of murder, rather than voluntary manslaughter, by credible evidence?

(PCR App. pp. 384).

The State filed its final brief in response on October 22, 2004. (PCR App. pp. 394-405). On March 11, 2005, the South Carolina Court of Appeals issued an unpublished order affirming the conviction. (PCR App. pp. 408-409). Petitioner did not seek further review from the state supreme court, and the remittitur was issued on March 29, 2005.

On May 25, 2005, Petitioner filed an application for post-conviction relief ("PCR"), in which he raised one claim, ineffective assistance of counsel. (PCR App. p. 412). Paul Archer, Esquire, represented Petitioner in the PCR action. The State made its return to the application on January 18, 2006. (PCR App. pp. 416-419). PCR counsel filed an amendment to the application on February 8, 2006. (PCR App. pp. 420-429). In his amendment to his PCR application, Petitioner cited to various portions of the record and argued as follows in regard to

2

counsel's closing argument:

> Page 329-332 the closing argument of Mr.
> Fitzsimmons was the most ineffective closing
> imaginable.  The purpose of a closing is to sum up
> the evidence most favorable to your client.  Mr.
> Fitzsimmons tells the Jury that this is what he
> believes happened, none of which was presented by
> any facts.  The Solicitor should have objected,
> but realized how foolish Mr. Fitzsimmons idea of
> what happened was.  He again quotes Shakespeare.
> Mr. Fitzsimmons should have told the Jury about
> the rape, the semen on the victim's penis, the
> photographs, the Co-Defendant taking a plea and
> changing his story.  Mr. Fitzsimmons could have
> told the Jury that if the victim was killed like
> Mr. William's testified by hitting him with a
> hammer and just leaving the house, then why would
> his client say he was raped unless he really was.
> Why would he make up such a story?  Mr.
> Fitzsimmons took 3 pages for his closing which had
> nothing to do in helping the Jury find the
> Defendant not guilty of Murder, but maybe guilty
> of Involuntary or Voluntary Manslaughter. ...

(PCR App. p. 426).

On February 22, 2006, the State filed a supplemental return. (PCR App. pp. 430-431).

An evidentiary hearing was held February 28, 2006, before the Honorable John C. Hayes, III, at which Petitioner was present represented by counsel and testified. (PCR App. p.432).  At the conclusion of the hearing, the PCR judge took the matter under advisement.  (PCR app. p. 528).  On March 2, 2006, the PCR judge issued an order denying relief.  (PCR App. pp. 530-533). Petitioner appealed the denial of relief.

Archer continued representation on appeal, along with present habeas counsel, William Isaac Diggs, Esquire.  Appellate

3

counsel filed a Petition for Writ of Certiorari in the Supreme

Court of South Carolina on November 20, 2006, and raised the

following issues:

> Did the circuit court err in holding that
> petitioner's trial counsel was not ineffective
> when counsel abandoned the issue of manslaughter
> while conceding to the jury that petitioner
> committed an unlawful homicide in response to
> having been raped?
>
> Sub Issue:  Is jury nullification a legitimate
> trial strategy in lieu of arguing lesser included
> verdicts which are supported by the evidence?

(Cert. Pet., p. 2).

The State made its return to the petition on March 19, 2007.

The Supreme Court of South Carolina denied the petition in a

summary order on January 9, 2008, and, on January 25, 2008,

issued the remittitur.  This petition timely followed on October

25, 2008.

The following documents have been made part of the record

here:

> 1.    PCR App. Vols. I and H, containing:
>
>> a.    September 2-4, 2003 Trial Transcript;
>> b.    Indictment;
>> c.    Arrest Warrant;
>> d.    Verdict Form;
>> e.    Sentencing Sheet;
>> f.    Final Brief of Appellant;
>> g.    Final Brief of Respondent;
>> h.    State v. Graham, Unpublished Opinion;
>> i.    2005 PCR Application;
>> j.    Return;
>> k.    Amendment to PCR Application;
>> l.    Supplemental Return;
>> m.    February 28, 2006 PCR Evidentiary

4

Hearing Transcript;
   n.   Order (denying relief);
   o.   Notice of Appeal;

2.   March 29, 2005 Remittitur Letter of the South Carolina Court of Appeals;

3.   Petition for Writ of Certiorari;

4.   Return to Petition for Writ of Certiorari;

5.   January 9, 2008, Letter, Clerk of the Supreme Court of South Carolina advising of Order (denying petition);

6.   January 25, 2008, Remittitur Letter of the Supreme Court of South Carolina.

### GROUND FOR RELIEF

In his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Petitioner makes the following claim of error:

Ground One:    Did the trial court err in holding trial counsel was not ineffective when counsel abandoned the issue of voluntary manslaughter while conceding that petitioner committed an unlawful homicide in response to having been raped? Sub Issue: Is jury nullification a legitimate trial strategy in lieu of arguing lesser included verdicts which are supported by the evidence?

Supporting facts:    Petitioner was given a drug and rendered unconscious.  He was raped.  When he awoke and realized the assault had occurred he became enraged and killed his assailant.  Trial counsel admitted the killing ...[in] front of the jury, but to the exclusion of arguing voluntary manslaughter to the jury, he argued jury nullification.  Petitioner submits such a strategy is not legitimate and constitutes the ineffective assistance of counsel.

(Habeas Petition, p. 6).

On February 19, 2009, the respondents filed a motion for summary judgment, and the petitioner filed an opposition to the motion on March 6, 2009.  Hence it appears consideration of the motion is appropriate.

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, is applicable to this action filed in 2007.  Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  Writing for the

6

majority with respect to this matter, Justice O'Connor stated
that a state court's decision can be contrary to the Supreme
Court's precedent in two ways: first, "if the state court arrives
at a conclusion opposite to that reached by the Court on a
question of law.  Second, a state-court decision is also contrary
to the Court's precedent if the state court confronts facts that
are materially indistinguishable from a relevant Supreme Court
precedent and arrives at a result opposite to" that of the
Supreme Court.  Id. at 1519.

Justice O'Connor further stated that "[t]he text of §
2254(d)(1) ... suggests that the state court's decision must be
substantially different from the relevant precedent of the
Court."  Id.  She added that a "state-court decision will also be
contrary to the Court's clearly established precedent if the
state court confronts a set of facts that are materially
indistinguishable from a decision of the  Court and nevertheless
arrives at a result different from the Court precedent."  Id. at
1519-20.  Even if "the federal court considering the prisoner's
habeas application might reach a different result applying"
relevant Supreme Court precedent, so long as the state court
applied the correct legal rule from Supreme Court cases, such a
"run-of-the-mill" state court decision could not be deemed
"contrary to" Supreme Court precedent.  Id. at 1520.

As for the "unreasonable application" prong of § 2254(d)(1), Justice O'Connor stated that a state court decision involves an unreasonable application of the Court's precedent if "the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of the Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id.

Justice O'Connor added that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 1522.  In making the "unreasonable application" inquiry, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

In another change brought by the AEDPA, 28 U.S.C. § 2254(e)(1) now states that "a determination of a factual issue made by a State court shall be presumed to be correct.  The

8

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. ... The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

### THE HABEAS CORPUS EXHAUSTION REQUIREMENT

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas corpus. Claims not so raised are considered defaulted." Breard v. Green, 523 U.S. 371, 375, 118 S.Ct. 1352 (1998), citing Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497 (1977); see also, 28 U.S.C. § 2254(b). The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions. See generally, O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, (1999). The court's exhaustion requirements under § 2254 are explained in Matthews v. Evatt, 105 F.3d 907, 910-911 (4th Cir.), cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997). In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all

state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them.  The burden of proving that a claim has been exhausted lies with the petitioner.  The exhaustion requirement, though not jurisdictional, is strictly enforced.  (Citations omitted).

Additionally, a claim has not been exhausted unless the substance of a petitioner's claim is "fairly presented" to the state courts.  The <u>Matthews</u> court explained, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not suffice.  In other words, fair presentation contemplates that both operative facts and the controlling legal principles must be presented to the state court."  <u>Matthews v. Evatt</u>, 105 F.3d at 911.

In order to exhaust his collateral claims in state court, a South Carolina habeas corpus petitioner must pursue a direct appeal and/or file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 - 160.  As the South Carolina Supreme Court has explained:  "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state

10

remedies." In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

### PROCEDURAL DEFAULT

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural default of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. See, e.g., Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661 (1986).

Procedural default can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Furthermore, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. A petitioner must also raise all grounds raised but denied at the PCR hearing level in his subsequent petition to the South Carolina Supreme Court

11

for a writ of certiorari from the denial of PCR if he is to
preserve them for consideration here.

## THE RELATIONSHIP BETWEEN EXHAUSTION AND PROCEDURAL
## DEFAULT

If a petitioner in federal court has failed to raise a claim
in state court at the appropriate juncture, and is precluded by
state rules from returning to state court to raise the issue, he
has procedurally bypassed (or defaulted) his opportunity for
relief in the state courts.  Under these circumstances, the
exhaustion requirement is "technically met" and the rules of
procedural bar apply.  Matthews v. Evatt, 105 F.3d 907 (4th Cir.
1997); cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997), citing
Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546
(1991); Teague v. Lane, 489 U.S. 288, 297-98, 109 S.Ct. 1060
(1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).
In other words, where the state court has not had the opportunity
to apply its own procedural bar, the federal court will
nevertheless bar the claim where application of the bar is clear.
Teague v. Lane, 489 U.S. at 297-98.

### EXCUSING PROCEDURAL DEFAULT

Notwithstanding the foregoing, the requirement of exhaustion
is not jurisdictional, and a federal court may consider claims
which have not been presented to the highest South Carolina court
with jurisdiction to hear the claim in very limited

12

circumstances. <u>Cranberry v. Greer</u>, 481 U.S. 129, 131, 107 S.Ct. 1671 (1989). A federal court will review a procedurally defaulted claim if the petitioner can demonstrate cause for the default and actual prejudice therefrom, or his actual innocence of the crimes for which he is being held. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991). In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." <u>Strickler v. Greene</u>, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936 (1999), quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). A petitioner must show reasonable diligence in pursuing his claim to establish cause. <u>Hoke v. Netherland</u>, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Moreover, the claim of cause must itself be exhausted. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Next, with respect to establishing "actual prejudice," a petitioner generally must show some error. <u>Tucker v. Catoe</u>, 221 F.3d 600, 615 (4th Cir.), <u>cert. denied</u>, 531 U.S. 1054, 121 S.Ct. 661 (2000). In addition, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm, to show prejudice. <u>Satcher v. Pruett</u>, 126

F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151, 117 S.Ct. 1969 (1997). To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997). It is a habeas petitioner's burden to raise cause and prejudice or actual innocence; if these are not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171, 116 S.Ct. 1575 (1996).

## DISCUSSION

A review of the record and relevant case law reveals that the petition should be denied.

Petitioner here had a direct appeal as well as a full round of PCR proceedings. Thus, he has exhausted all available remedies in the state courts and has no remaining state remedies which can be pursued. See generally, Dunlap v. State, 371 S.C. 585, 585-586, 641 S.E.2d 431, 431 (2007)(recognizing both avenues in discussing the exhaustion of state remedies).

14

Nonetheless, the sole issue presented here has been procedurally defaulted and, therefore, this court may not reach the merits of the claim.  Further, Petitioner has not demonstrated either cause for the default and prejudice therefrom or that a miscarriage of justice would occur if the claim was not heard, i.e. actual innocence, to overcome the procedural bar. Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

Petitioner argues in the instant habeas petition that the PCR judge erred in not finding counsel ineffective when he "abandoned" a voluntary manslaughter argument after admitting an "unlawful homicide in response to having been raped." (Habeas Petition, p. 6).  He also asserts as a "sub issue" "jury nullification a legitimate trial strategy in lieu of arguing lesser included verdicts which are supported by the evidence?" Id.

In his initial PCR application, Petitioner alleged ineffective assistance of counsel in general.  (PCR App. p. 412). In his amendment to his PCR application, Petitioner cited to various portions of the trial record in a critique of trial counsel's performance and argued that,

> "the closing argument of Mr. Fitzsimmons was the
> most ineffective closing imaginable.  The purpose
> of a closing is to sum up the evidence most
> favorable to your client.  Mr. Fitzsimmons tells
> the Jury that this is what he believes happened,
> none of which was presented by any facts.  The
> Solicitor should have objected, but realized how
> foolish Mr. Fitzsimmons idea of what happened was.

15

He again quotes Shakespeare.  Mr. Fitzsimmons
should have told the Jury about the rape, the
semen on the victim's penis, the photographs, the
Co-Defendant taking a plea and changing his story.
Mr. Fitzsimmons could have told the Jury that if
the victim was killed like Mr. William's testified
by hitting him with a hammer and just leaving the
house, then why would his client say he was raped
unless he really was. Why would he make up such a
story?  Mr. Fitzsimmons took 3 pages for his
closing which had nothing to do in helping the
Jury find the Defendant not guilty of Murder, but
maybe guilty of Involuntary or Voluntary
Manslaughter. ...

(PCR App. p. 426).

At the PCR hearing, when asked to clarify his grounds, PCR

counsel responded:

... I have an amendment that's in the file. I'm
going to give it to you, and if you look at the
bottom of it, I'm just going to go through each
page because I think the whole transcript is
ineffective. And I'm going to base my whole case
on a case that came down just last month from the
South Carolina Supreme Court. It's called Nance v.
State.

(PCR App. p. 433).

PCR counsel explained that the South Carolina Supreme Court

in Nance[1], found that "counsel entirely fail[...ed] to subject

the prosecution's case to meaningful adversary testing." (PCR

---

[1] In that case, the South Carolina Supreme Court presumed
prejudice to the petitioner pursuant to United States v. Cronic,
466 U.S. 648 (1984), finding "a total breakdown in the adversarial
process during both the guilt phase and penalty phase of
Petitioner's trial." Nance v. Ozmint, 367 S.C. 547, 555, 626
S.E.2d 878, 882 (2006). That court cautioned, however, that a
Cronic fact pattern is rare and presumption of prejudice is
reserved for such rare instances of "total breakdown in the
adversarial process....". Id.

App. p. 434).  He argued that had trial counsel "properly
conducted this case, I believe the jury would have come back with
a voluntary manslaughter or involuntary manslaughter, but counsel
never pursued that avenue."  (PCR App. p. 435).

It cannot be said that the foregoing statements to the PCR
court fairly presented an allegation that trial counsel was
constitutionally ineffective for arguing jury nullification to
the jury as required to preserve it for review.  Matthews v.
Evatt, 105 F.3d at 911.  The claim presented here was not
presented "face-up and squarely with the federal question plainly
defined.  Id.  At best this was and oblique reference which
hints that a theory may be lurking in the woodwork.  Again, fair
presentation contemplates that both operative facts and the
controlling legal principles must be presented to the state
court."  Matthews v. Evatt, 105 F.3d at 911.

Further, the PCR judge's order specifically addressed only
the Nance issue i.e. an allegation of a complete failure of
"meaningful adversary testing." (PCR App. p. 532).  The PCR order
clearly reflects that the PCR judge did not make individualized
rulings on specific issues of ineffective assistance of counsel.

Petitioner here argued in his reply that the issue is not
defaulted because it was presented to the South Carolina Supreme
Court in his petition for a writ of certiorari and that court did
not base its denial on Petitioner's petition on default in the

17

PRC action[2]. However, there is no reason to assume that the
court took up the question on the merits and rejected it on the
merits instead of rejecting it because the question had not been
properly preserved for the court's review. In fact, under South
Carolina law, a "failure to specifically rule on the issues
precludes appellate review of the issues." Marlar v. State, 375
S.C. 407, 408, 653 S.E.2d 266, 266 (2007); Humbert v. State, 345
S.C. 332, 338, 548 S.E.2d 862, 866 (2001)(issue not ruled upon by
PCR judge not preserved for appeal).

Therefore, this issue, though raised in the PCR appeal, had
been already been procedurally defaulted because Petitioner did
not move to have the issue addressed in an amended order, or
otherwise properly preserve the issue for appellate review.
Marlar, 375 S.C. at 410, 653 S.E.2d at 267 ("Because respondent
did not make a Rule 59(e) motion asking the PCR judge to make
specific findings of fact and conclusions of law on his
allegations, the issues were not preserved for appellate
review."). See also, Murray, 477 U.S. at 485 (presentation must
be in compliance with state procedure to be properly presented).

Likewise, Petitioner's "sub issue," whether an argument
seeking jury nullification can ever be ineffective assistance of
counsel, was never presented to the PCR judge, not even in

---

[2] The respondent argued default to the South Carolina Supreme
Court in its return and the court cited to no authority in its
denial of the petition.

argument at the PCR hearing.  Again, that omission is fatal to his claim here.

Additionally, Petitioner presented nothing showing cause and prejudice or an actual miscarriage of justice.  Petitioner explained that his position is that no default occurred so that he did not need to present an excuse for the nonexistent default. Here, it appears that any cause for the default must necessarily rest on PCR counsel's actions, because Petitioner was represented by his attorney at the PCR hearing where the issues were framed, evidence presented, and argument offered.  Yet, it is well settled that error in PCR counsel's representation cannot excuse the default as Petitioner is not constitutionally entitled to PCR counsel.  Coleman v. Thompson, 501 U.S. 722, 752 (1991)(rejecting finding cause to excuse default on ineffective assistance of counsel where no constitutional guarantee of effective assistance existed); Mackall v. Angelone, 131 F.3d 442, 448 (4th Cir. 1997)("in order to constitute cause, attorney error must amount to constitutionally ineffective assistance of counsel and that this standard could not be satisfied in the absence of a constitutional right to counsel").  See also, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)(no constitutional right to counsel in collateral proceedings).

Moreover, there is no indication that there would be a miscarriage of justice if the issue was not heard, as the issue

19

does involve evidence, or even a claim, of actual innocence.

In sum, Petitioner defaulted the sole claim he presented in the instant case and relief should be denied on that basis.

**CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the respondent's motion for summary judgment be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

May __11__, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).